FILED
2022 Sep-07  AM 10:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **MITSUI SUMITOMO INSURANCE COMPANY OF AMERICA AND TOKIO MARINE AMERICA INSURANCE COMPANY,**<br><br>Plaintiffs,<br><br>v.<br><br>**VERTIV CORPORATION,**<br><br>Defendant. | Civil Action No.<br><br>_____ |

## COMPLAINT FOR PROPERTY DAMAGE

Mitsui Sumitomo Insurance Company of America and Tokio Marine America Insurance Company sue Vertiv Corporation as follows:

### THE PARTIES, JURISDICTION AND VENUE

1. Plaintiff Mitsui Sumitomo Insurance Company of America ("Mitsui") is a New York corporation with its principal place of business in New York City, New York.

2. Plaintiff Tokio Marine America Insurance Company ("Tokio Marine") is a New York corporation with its principal place of business in New York City, New York.

LEGAL\59306619\1

3. Defendant Vertiv Corporation ("Vertiv") is an Ohio corporation with its principal place of business in Columbus, Ohio. Defendant Vertiv may be served with process by service upon its registered agent: CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, Alabama 36104.

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## ALLEGATION OF FACTS

6. This action arises from the May 20, 2022, explosion at the Toray Industries (America), Inc. ("Toray") carbon fiber composite material manufacturing facility in Decatur, Alabama.

7. At all times material to this Complaint, Plaintiff Mitsui provided property insurance covering the facility.

8. At all times material to this Complaint, Plaintiff Tokio Marine provided property insurance covering the facility.

9. The Toray facility uses four carbon fiber production process lines, designated CA1, CA2, CA3, and CA4, to manufacture carbon fiber composite material.

10. Safe operation of the carbon fiber production lines is dependent upon an uninterrupted supply of electrical power.

11. Each of the four carbon fiber production lines is equipped with an uninterruptable power supply ("UPS") designed to automatically and instantaneously provide a backup electrical power supply in the event of an external power outage.

12. The UPS systems at the Toray facility were installed by Defendant Vertiv Corporation in or about 2014.

13. Each of the four UPS systems is designed to provide backup electrical power from a set of forty 12-volt lead acid batteries.

14. At all times material to this Complaint, Defendant Vertiv was the exclusive provider of preventative maintenance services for all four of Toray's UPS systems.

15. On May 20, 2022, at approximately 1:30 p.m., the electric utility company-supplied electricity to Toray's facility was briefly interrupted for a short period of time (approximately 18 seconds).

16. The UPS systems for production lines CA1, CA2, and CA4 operated as intended to automatically supply backup electrical power to those production lines, allowing them to safely shut down.

17. The UPS for production line CA3 malfunctioned and failed to provide the required backup electrical power for that production line to safely shut down.

18. As a result of the malfunction of the UPS system, production line CA3 experienced a catastrophic explosion.

19. As a result of the explosion of production line CA3, the Toray facility suffered extensive damage to its building and equipment in the approximate amount of $5,200,000 and business losses of approximately $13,500,000, for a total loss of approximately $18,700,000.

20. Subsequent inspection of the UPS system for CA3 revealed that all of its batteries were in poor condition, with evidence of bulging and cracking of the battery cases, which should have been obvious to Vertiv prior to the explosion.

21. The UPS system for production line CA3 malfunctioned because the batteries were in poor condition and not capable of supplying the electrical power required for proper operation of the system.

22. Defendant Vertiv inspected the UPS system for CA3 five weeks before the explosion, on April 14, 2022.

23. Defendant Vertiv did not indicate in its April 14, 2022, "Service Report: Battery" for the CA3 UPS that the batteries were in poor condition and incapable of supplying the electrical power required for proper operation of the UPS system.

24. Instead, in its April 14, 2022, "Service Report: Battery" for the CA3 UPS system batteries, Vertiv advised Toray that the system was "fully operational" and "no action required."

25. Vertiv also indicated in its April 14, 2022, "Service Report: Battery" for the CA3 UPS that there were no "Required Customer Actions" and "no issues to note."

26. In the "Findings and Recommendations" for its April 14, 2022, "Service Report: UPS" for the CA3 UPS system, Vertiv stated "annual pm no issues to note."

27. In the "Required Customer Actions" section of its April 14, 2022, "Service Report: UPS" for the CA3 UPS system, Vertiv stated "None."

28. After the incident, Vertiv replaced the batteries for the UPS system for production line CA3, after which it was found to be in proper operating condition.

29. Pursuant to their contracts of insurance with Toray Industries, Plaintiffs Mitsui and Tokio Marine are obligated to indemnify Toray Industries for covered losses arising from the incident, and are subrogated to the extent of their

5

indemnification to all claims, rights, and causes of action against those parties responsible for the May 20, 2022, explosion.

## COUNT I – GROSS NEGLIGENCE

30. Defendant Vertiv owed to Toray the duty to use reasonable care in carrying out its UPS system preventative maintenance work so as not to expose Toray to an unreasonable risk of harm.

31. Defendant Vertiv breached its duty to Toray and was grossly negligent because it failed to report to Toray the poor condition of the batteries, which would have been obvious with just a cursory visual inspection of the batteries by a minimally competent technician.

32. As a direct, proximate, and foreseeable result of Defendant Vertiv's breach of duty and gross negligence, Toray and Plaintiffs have been harmed in the approximate amount of $18,700,000.

## COUNT II – WANTONNESS

33. At all times material to this Complaint, Vertiv knew that Toray was relying upon it to properly perform preventative maintenance on the UPS systems for its production lines.

34. Vertiv's failure to report to Toray the poor condition of the batteries for the CA3 UPS system, which exhibited evidence of bulging and cracking that would

6

LEGAL\59306619\1

have been obvious to a minimally competent technician, was in wanton, reckless, and conscious disregard of the rights and safety of Toray.

35. As a direct, foreseeable, and proximate result of Vertiv's wanton, reckless, and conscious disregard for the rights and safety of Toray, Toray and Plaintiffs have suffered damages in the approximate amount of $18,700,000.

## COUNT III – FRAUD

36. At all times material to this action, Vertiv knew that Toray was relying upon it to properly perform preventative maintenance on Toray's UPS systems.

37. In its April 14, 2022, "Service Report: Battery" for the CA3 UPS system, Vertiv advised Toray that the system was "fully operational" and "no action required."

38. Vertiv also indicated in its April 14, 2022 "Service Report: Battery" that there were no "Required Customer Actions" and "no issues to note."

39. Vertiv's statement in the April 14, 2022, "Service Report: Battery" that the CA3 UPS system batteries were "fully operational" was false because the system's forty batteries were in poor condition, with evidence of bulging and cracking that would have been obvious to a minimally competent technician, and were not capable of supplying the required electrical power to operate the UPS system.

7

40. Vertiv's statement "no action required" in the April 14, 2022, "Service Report: Battery" was false because the batteries required immediate replacement.

41. Vertiv's statement that there were "no issues to note" in the April 14, 2022, "Service Report: Battery" was false for the same reason.

42. In the "Findings and Recommendations" for its April 14, 2022, "Service Report: UPS" for the CA3 UPS system, Vertiv stated "annual pm no issues to note."

43. In the "Required Customer Actions" section of its April 14, 2022, "Service Report: UPS" for the CA3 UPS system, Vertiv stated "None."

44. Vertiv's statement "annual pm no issues to note" in the "Findings and Recommendations" for its April 14, 2022, "Service Report: UPS" for the CA3 UPS system was false because the system's forty batteries were in poor condition, with evidence of bulging and cracking that would have been obvious to a minimally competent technician, and were not capable of supplying the required electrical power to operate the UPS system.

45. Vertiv's statement "None" in the "Required Customer Actions" section of its April 14, 2022, "Service Report: UPS" for the CA3 UPS system was false because the batteries required immediate replacement.

46. Vertiv's false statements concern material facts, specifically the condition of the UPS system and batteries for production line CA3, that Toray reasonably relied upon and were fraudulent.

47. As a direct, proximate and foreseeable result of Vertiv's fraudulent statements, Toray and Plaintiffs have been damaged in the approximate amount of $18,700,000.

WHEREFORE, Plaintiffs pray that:

    A.    Process issue and be served upon Defendant compelling it to appear and answer this Complaint;

    B.    Plaintiffs have judgment in their favor and against Defendant in the approximate amount of $18,700,000, to be more specifically proven at trial; and

    C.    Plaintiffs have all other relief allowed by law and equity.

Respectfully submitted this 7th day of September, 2022.

*/s/ David A. Terry*
David A. Terry (TER029)
COZEN O'CONNOR
The Promenade, Suite 400
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 572-2016
Facsimile: (404) 602-9946
E-mail: dterry@cozen.com

*Attorney for Plaintiffs*

CO-COUNSEL:

David M. Bessho
*Pro Hac Vice to be submitted*
COZEN O'CONNOR
The Promenade, Suite 400
1230 Peachtree Street, N.E.
Atlanta, Georgia  30309
Telephone:  (404) 572-2000
Facsimile:   (404) 572-2199
E-mail:   dbessho@cozen.com

*Attorney for Plaintiffs*