UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MITSUI SUMITOMO INSURANCE
COMPANY OF AMERICA, *et al.*,

          Plaintiffs,

  v.

VERTIV CORPORATION,

          Defendant.

Civil Action 2:23-cv-1398
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

Plaintiffs, Mitsui Sumitomo Insurance Company of America and Tokio Marine America Insurance Company, New York citizens and subrogees of their insured, Toray Industries (America), Inc., bring this action founded on diversity jurisdiction under 28 U.S.C. § 1332 against Defendant, Vertiv Corporation, an Ohio citizen, alleging gross negligence, wantonness, and fraud arising from Vertiv's alleged misrepresentations as to the condition of batteries powering Toray's uninterruptable power supply. This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge under 28 U.S.C. § 636(c), is before the Court on Defendant's Motion for Judgment on the Pleadings (ECF No. 36) and Plaintiff's Motion for Leave to Amend the Complaint (ECF No. 38). For the reasons that follow, both motions are **GRANTED IN PART and DENIED IN PART**.

          **I.**          **BACKGROUND**

Plaintiffs' insured, Toray, operates a carbon fiber composite material manufacturing facility in Decatur, Alabama. (Compl. ¶ 6, ECF No. 1.) At all relevant times, Plaintiffs provided

property insurance covering the facility. (*Id.* at ¶¶ 7–8.) The facility uses four carbon fiber production process lines, designated CA1, CA2, CA3, and CA4, to manufacture carbon fiber composite material. (*Id.* at ¶ 9.) Each of the production lines is equipped with an uninterruptable power supply ("UPS") designed to automatically and instantaneously provide a backup electrical power supply in the event of an external power outage. (*Id.* at ¶ 11.) Each UPS system provides backup electrical power from a set of forty batteries. (*Id.* at ¶ 13.)

The UPS systems at the Toray facility were installed by Defendant in 2014. (*Id.* at ¶ 12.) Defendant also provided ongoing preventative maintenance services for all four of the UPS systems and was at all material times the exclusive provider of preventative maintenance services for the UPS systems. (*Id.* at ¶ 14.) On April 14, 2022, Defendant inspected the UPS system for CA3 and reported that the system was "fully operational," noting "no action required," no "Required Customer Actions," "no issues to note," and "annual pm no issues to note." (*Id.* at ¶¶ 22–27).

Five weeks later, on May 20, 2022, the Toray facility lost power for 18 seconds. (*Id.* at ¶ 15.) Although the UPS systems for the other three production lines operated as intended and supplied backup electrical power, the UPS for production line CA3 malfunctioned and failed to provide the required backup electrical power for that production line to safely shut down. (*Id.* at ¶¶ 16–17.) As a result of the failure of the UPS system, production line CA3 "experienced a catastrophic explosion" causing extensive damage to Toray's building and equipment. (*Id.* at ¶ 18.)

Subsequent inspection of the CA3 UPS system revealed that all of its forty batteries were in poor condition, with evidence of bulging and cracking of the battery cases, which Plaintiffs allege should have been obvious to Defendant when inspecting the UPS on April 14, 2022. (*Id.*

at ¶ 20, 22.) Plaintiffs allege that the CA3 UPS system malfunctioned because the batteries were in poor condition and not capable of supplying the electrical power required for proper operation of the system. (*Id.* at ¶ 21.) After the incident, Defendant replaced the batteries for the CA3 UPS system, after which it was found to be in proper operating condition. (*Id.* at ¶ 28.)

Plaintiffs' Complaint in subrogation asserts three causes of action: Gross Negligence (Count I), Wantonness (Count II), and Fraud (Count III). Plaintiffs seek $18,700,000 in damages comprising damage to Toray's building and equipment as well as business interruption. (*Id.* at ¶¶ 19, 47.) On May 9, 2023, this Court issued a Preliminary Pretrial Order ("PPO") reflecting the parties' agreement that "[m]otions or stipulations addressing the parties or pleadings, if any, must be filed no later than July 14, 2023"; that "[a]ll discovery shall be completed by February 28, 2024"; and that "[c]ase dispositive motions shall be filed by April 1, 2024." (ECF No. 26.)

Defendant filed its Answer (ECF No. 27) on May 9, 2023, and filed its Motion for Judgment on the Pleadings (ECF No. 36) on August 10, 2023, asserting that Plaintiff's allegations fail to state claims under Ohio law and that the parties' relationship is governed by a June 23, 2021 Service Agreement. Plaintiffs filed both a memorandum in opposition (ECF No. 37) to Defendant's Motion for Judgment on the Pleadings and a Motion to Amend the Preliminary Pretrial Order and for Leave to File Amended Complaint (ECF No. 38) on August 31, 2023. Plaintiff's Motion to Amend seeks leave to amend the Complaint to add additional factual allegations and a claim for breach of contract to address purported defects in the original Complaint. (Proposed Am. Compl., ECF No. 38-1.)

II.   **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to "move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a Rule 12(c) motion, the Court must take "all well-pleaded material allegations of the pleadings of the opposing party as true, and the

3

motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526 (6th Cir. 2006) (quoting *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). "A Rule 12(c) motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Rawe*, 462 F.3d, 526 (cleaned up).

"Courts apply the same analysis to motions for judgment on the pleadings under Rule 12(c) as they apply to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." *McGath v. Hamilton Local Sch. Dist.*, 848 F. Supp. 2d 831, 836 (S.D. Ohio 2012) (citing *Warrior Sports, Inc. v. National Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010)). Under Rule 12(b)(6), "[a] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). However, a court "need not accept as true legal conclusions or unwarranted factual inferences." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581–82 (6th Cir. 2007) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n,* 946 F.2d 1233, 1235 (6th Cir. 1991)).

A.      **The Court declines to consider material outside the pleadings.**

The scope of the Court's review in ruling on a motion for judgment on the pleadings is generally limited to the pleadings themselves. *See*, *e.g.*, *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011). If the Court does consider material outside the pleadings, the motion must be treated as one for summary judgment under Federal Rule of Civil Procedure 56 and the parties must be provided an opportunity to present all material pertinent to the motion. *Id.* However, the Court may consider "exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long

as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Id.*

In briefing Defendant's Motion for Judgment on the Pleadings, both parties attach documents and reference facts that are not referenced in Plaintiffs' Complaint or Defendant's Answer. Of particular importance, Plaintiffs did not attach or even reference the existence of the June 21, 2023 Service Agreement in their Complaint. Defendant suggests that the Court may nevertheless consider the Service Agreement, citing *Sollenberger v. Sollenberger*, 173 F. Supp. 3d 608, 618–19 (S.D. Ohio 2016), for the proposition that "even if a plaintiff neglects to append a governing contract to the complaint, the court may consult the contract to prevent a legally deficient claim from surviving a Rule 12(c) motion." (Def.'s Mot. 8, ECF No. 36.)

The Court is not persuaded that it may consider the Service Agreement without converting the Motion for Judgment on the Pleadings to one for summary judgment. Although *Sollenberger* states that the Court may consider "documents referenced in the complaint *or* central to plaintiff's claim," 173 F. Supp. 3d at 618 (emphasis added), the United States Court of Appeals for the Sixth Circuit has consistently held that documents outside the pleadings may be considered only if they are "referred to in the complaint *and* are central to the claims contained therein." *See Rondigo*, 641 F.3d at 680–81 (emphasis added); *accord Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). Regardless of how "central" the Service Agreement may be to the ultimate merits of Plaintiffs' claims, the Service Agreement is undisputedly not "referred to in the complaint." At this early stage of the case, the Court does not find it appropriate to consider material outside the pleadings and convert the motion to one for summary judgment. The Court will therefore not consider the Service Agreement, nor other

5

additional documents or facts offered by the parties in their briefing, in evaluating Defendant's Motion for Judgment on the Pleadings.

**B.      Plaintiffs have failed to state a claim for gross negligence.**

Under Ohio law, which the parties agree governs Plaintiffs' claims, "[a] person's failure to exercise ordinary care in doing or failing to do something will not amount to actionable negligence unless such person owed to someone injured by such failure a duty to exercise ordinary care." *Snay v. Burr*, 167 Ohio St. 3d 123, 126 (2021). "In other words, if there is no duty then there can be no liability for negligence." *Id.* "[A] defendant's duty to a plaintiff depends upon the relationship between the parties and the foreseeability of injury to someone in the plaintiff's position." *Id.* (quoting *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St. 3d 96, 98 (1989)). "Foreseeability alone, however, is not always sufficient to establish a duty of care." *Id.* at 127. Rather, "tort liability . . . arises from the breach of some positive legal duty imposed by law because of the relationship of the parties . . . ." *Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir. 1976) (applying Ohio law).

Defendant argues that in order for Plaintiffs' negligence claim to succeed, Plaintiffs must "show that the tort claims derive from the breach of duties that are independent of the contract and that would exist notwithstanding the contract." (Def.'s Mot. 10, ECF No. 36) (quoting *Netherlands Ins. Co. v. BSHM Architects, Inc.*, 111 N.E.3d 1229, 1237 (Ohio Ct. App. 2018); *see also Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981) ("a tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed") (applying Ohio law). Defendant's argument assumes that the Court would consider the Service Agreement. But even though the Court assumes for the purpose of Defendant's motion that no Service Agreement exists, the result is the same: Plaintiff

6

must identify a duty owed by Defendant to Toray, and that duty must be imposed by law, not contract.

Plaintiffs contend that they "have plainly asserted breaches independent of [any contractual obligations because this] case does not involve Defendant's improper maintenance or repair of a battery. It involves the wholesale gross negligence and fraudulent misrepresentation, independent of the Service Agreement." (Pls.' Mem. in Opp'n 10, ECF No. 37.) Yet Plaintiffs have not specified the source of any duty on Defendant's part to inspect the batteries outside the contractual obligations in the Service Agreement, on which Plaintiffs expressly disclaim reliance for their gross negligence claim. Nor are there allegations in the Complaint to suggest the parties' business relationship would create a duty of care on Defendant's part. *See*, *e.g.*, *Tarquinio v. Equity Tr. Co.*, 2007 WL 1874241, *3 (Ohio Ct. App. 2007) (finding no extra-contractual duty when the parties had a "standard business relationship"); *Kenning v. Cincinnati Bell, Inc.*, No. C-780396, 1979 WL 208744, at *3 (Ohio Ct. App. Sept. 19, 1979) ("The performance of ordinary commercial duties not involving the performance of public duties or any special relationship between the party obligated to perform and the party entitled to performance is generally not within the contemplation of tort law."); *Wells Fargo Bank, N.A. v. Fifth Third Bank*, 931 F. Supp. 2d 834, 839 (S.D. Ohio 2013) ("Clearly, these duties are contractual in nature as Fifth Third would have no duty to administer the line of credit on behalf of Wells Fargo in the absence of the Participation Agreement.") (applying Ohio law). Because Plaintiffs have not sufficiently alleged the existence of a duty, there can be no liability for negligence, and Plaintiffs' gross negligence claim must be dismissed.

C. **Plaintiffs have failed to state a claim for wantonness.**

Defendant contends that Plaintiffs' wantonness claim fails for a simple reason: Ohio does not recognize a standalone cause of action for wanton or reckless conduct. The Court agrees. *See*,

*e.g.*, *Bickerstaff v. Lucarelli*, 830 F.3d 388, 399 (6th Cir. 2016) ("As an initial matter, reckless, wanton, or willful conduct is not a stand-alone cause of action; it is instead a level of intent that negates certain defenses in a negligence action.") (cleaned up) (applying Ohio law); *Ball v. Olentangy Loc. Sch. Dist. Bd. of Educ.*, No. 2:20-CV-2681, 2022 WL 594799, at *11 (S.D. Ohio Feb. 28, 2022) ("Ohio law does not recognize a stand-alone cause of action for recklessness".); *Lloyd v. Rogerson*, 2019 WL 2721413, at *9 (Ohio Ct. App. June 28, 2019) ("willful and wanton misconduct is not a recognized separate cause of action in Ohio").

Plaintiffs' authorities in support of a contrary position are unpersuasive. In *Akers v. Stirn*, the Ohio Supreme Court indeed held that "there was sufficient evidence to go to the jury on the question of wanton misconduct by the defendant." 136 Ohio St. 245, 251 (1940). However, that case concerned not a common-law tort action, but an action under Ohio's "guest statute," now codified at Ohio Revised Code § 4515.02. Under the guest statute, the owner or operator of a motor vehicle is not liable to a guest being transported in the vehicle unless the guest's injuries are caused by the willful or wanton misconduct of the owner or operator. Ohio Rev. Code § 4515.02. Accordingly, just as stated in *Bickerstaff*, the Ohio Supreme Court considered a party's wantonness not as a standalone claim, but as a level of intent that might negate certain defenses under the guest statute. Similarly, the Ohio Court of Appeals' holding that "willful or wanton misconduct on the part of a party to a contract can result in the imposition of tort liability" is not at all inconsistent with the rule that Ohio does not recognize a separate cause of action for wantonness. *See Am. States Ins. Co. v. Honeywell, Inc.*, No. 56552, 1990 WL 19319, at *4 (Ohio Ct. App. Mar. 1, 1990). Finally, The Ohio Supreme Court in *Jones v. VIP Development Company* examined the contours of *intentional* torts, and held only that substantial certainty of a threat of harm to others was sufficient to satisfy the mental state required for

intentional torts. 15 Ohio St. 3d 90, 95 (1984). In short, none of these cases stand for the proposition that Ohio recognizes a standalone cause of action for wantonness. Plaintiffs' wantonness claim must therefore be dismissed.

**D.     Plaintiffs have stated a claim for fraud.**

Under Ohio law, the elements of fraud are:

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St. 3d 453, 467–68 (2018). Defendant contests the sufficiency of Plaintiffs' allegations only as to the fourth element, asserting that the Complaint falls short of plausibly alleging that Defendant intended to deceive Toray into relying on Defendant's inaccurate battery inspection reports. Defendant contends that "[t]his crucial allegation is likely missing because it would be nonsensical—the notion that [Defendant] would intentionally deceive a customer into relying on an erroneous service report is simply illogical." (Def.'s Mot. 14, ECF No. 36.) Plaintiffs, for their part, query: "What other purpose would there be in preparing falsified inspection reports, other than to induce Toray's reliance on them? If Toray had not been successfully induced into relying upon the inaccurate service reports, it would not have paid Defendant for the inspection, and likely would have fired them." (Pls.' Mem. in Opp'n 15, ECF No. 37.) On reply, Defendant suggests that "the most logical inference" is that "the technician who prepared the battery reports simply made a mistake." (Def.'s Reply 10, ECF No. 41.)

Plaintiffs have the better argument. The Complaint alleges that Defendant inspected the CA3 UPS system batteries on April 14, 2022, at which time it would have been obvious to any

9

minimally competent technician that at least some of the battery cases were bulging and cracking, such that the batteries were in poor condition and not capable of supplying the electrical power required for proper operation of the system. Plaintiffs have also alleged that, despite this obvious visual evidence, Defendant provided Toray with a battery inspection report indicating that the CA3 UPS system was fully operational and no action was required on Toray's part. It is difficult to credit Defendant's assertion that the most likely explanation is that one of its technicians simply made a mistake, given the stark contrast between the alleged obviousness of the battery defects and the "fully operational" report. The Court concludes that it is reasonable to infer that Defendant knew its inspection report was false and that it nevertheless intentionally provided that false report to Toray with the intention to mislead Toray into relying on the false report. *See Starinki v. Pace*, 41 Ohio App. 3d 200, 204–05, (Ohio Ct. App. 1987) ("Starinki's intent to mislead Pace into reliance can be inferred from the circumstances."). Because Defendant does not contest the sufficiency of Plaintiffs' allegations as to the remaining elements of fraud, Plaintiff's fraud claim need not be dismissed.

      The Court is not persuaded by Defendant's argument that Plaintiffs' fraud claim is deficient because Plaintiffs did not include express allegations amounting to the phrase, "Defendant intended to mislead Toray into relying on its false statements." (Def.'s Reply 9, ECF No. 41.) Defendant quotes *Snyder v. United States*, 590 F. App'x 505, 510 (6th Cir. 2014) for the proposition that "when a complaint fails to allege a necessary element of the claim, it must be dismissed." But *Snyder*, which did not explore this proposition beyond the quoted sentence, merely cites the general pleading standards set forth in *Iqbal*, which does not hold that plaintiffs must include an allegation that parrots the element of each claim. To the contrary, *Iqbal* emphasizes that "recitals of the elements of a cause of action" are not what makes a claim

plausible for purposes of Rule 12(b)(6) or Rule 12(c). *See Iqbal*, 556 U.S. at 678. Instead, the Court must determine whether the complaint contains "sufficient *factual* matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (cleaned up) (emphasis added). The Court finds that Plaintiffs' factual allegations are sufficient to raise a reasonable inference that Defendant's conduct satisfies all the necessary elements of a fraud claim under Ohio law.

### III. PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

Plaintiffs request, to the extent the Court grants judgment on the pleadings for Defendant, that they be permitted to amend their Complaint to remedy any defects by asserting additional factual allegations and advancing a new claim for breach of contract. Because the Court has granted judgment on the pleadings for Defendant on Plaintiffs' claims for gross negligence and wantonness, the Court now turns to Plaintiffs' Motion to Amend.

District courts are required to enter a scheduling order, which limits the time "to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). When, as in the instant case, a party misses a scheduling order's deadlines and seeks a modification of those deadlines, the party must first demonstrate good cause. *See* Fed. R. Civ. P. 16(b)(4); *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quotation omitted) (citing cases); *see also Leary v. Daeschner,* 349 F.3d 888, 906 (6th Cir. 2003) ("[A] court choosing to modify the schedule upon a showing of good cause, may do so only if it cannot reasonably be met despite the diligence of the party seeking the extension." (quotation omitted)). "Another important consideration . . . is whether the opposing party will suffer prejudice by virtue of the amendment." *Leary*, 349 F.3d at 906 (citing *Inge*, 281 F.3d at 625).

11

If good cause is shown under Rule 16, the Court then considers whether amendment is appropriate under Federal Rule of Civil Procedure 15. Under Rule 15(a)(2), the Court should give leave for a party to amend its pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). "The thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Teft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982) (citations omitted); *Oleson v. United States*, 27 F. App'x 566, 569 (6th Cir. 2001) (internal quotations omitted) (noting that courts interpret the language in Rule 15(a) as conveying "a liberal policy of permitting amendments to ensure the determination of claims on their merits"). "Nevertheless, leave to amend 'should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.'" *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011) (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)). A court may deny a motion for leave to amend for futility if the amendment could not withstand a motion to dismiss. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010); *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005).

### A.    Plaintiff has demonstrated good cause to amend the case schedule under Rule 16.

Rule 16(b)(4) requires the Court to consider two factors: Plaintiffs' diligence in seeking the extension and lack of prejudice to the opposing parties. Here, Plaintiffs' requested amendment would create little, if any, prejudice to Defendant. The proposed amendments to the Complaint would add a breach of contract claim and more detailed factual allegations as to the falsity of the battery inspection reports, as well as more detailed allegations about Defendant's failure to exercise care and intent to deceive Toray. The breach of contract claim is premised on the same facts underlying the original claims, and the additional factual allegations do not appear to change the nature of the case in any substantial way or to require any additional discovery that

would not have been contemplated in connection with the original claims. Further, the case remains in an early stage as discovery remains open until February 28, 2024, and dispositive motions are not due until April 1, 2024. *Cf. Miller v. Admin. Office of Courts*, 448 F.3d 887, 898 (6th Cir. 2006) ("Because the discovery deadline had already passed and the deadline for filing dispositive motions . . . was imminent, the defendants would have been prejudiced if a further amendment had been permitted by the district court."). Plaintiff's request to extend the pleading amendments deadline is also the first extension of the case schedule requested by any of the parties, and no party suggests that allowing Plaintiff's pleading amendment would require extending other case deadlines. And even if allowing the amendment would require extending other deadlines, this case has not been pending so long that strict enforcement of the existing case schedule is necessary to prevent undue delay. The Court is therefore unable to discern any prejudice that would be caused by permitting the amendment.

      Diligence poses a closer question. Plaintiffs contend they were diligent because they moved for leave to amend only 21 days after Defendant filed its Motion for Judgment on the Pleadings (that is, 48 days after the deadline for motions to amend the pleadings), and because "[f]rom Plaintiffs' perspective, there was no reason or need to amend the Complaint until Defendant Vertiv filed its Motion for Judgment on the Pleadings." (Pls.' Mot. 3, ECF No. 38.) Defendant contends that Plaintiff was not diligent because Defendant made its position clear that this dispute is governed by the Service Agreement, and that Plaintiffs' Complaint is therefore deficient, well before the expiration of the July 14, 2023 deadline for motions to amend the pleadings. (Def.'s Mem. in Opp'n 5, ECF No. 42.) The Court notes that Plaintiffs were on notice of Defendant's position no later than May 8, 2023, when the parties filed their joint Rule 26(f)

Report stating, "[Defendant] denies [Plaintiffs'] allegations and contends that the parties' dispute is governed by [Defendant's] service agreement with Plaintiffs' subrogor." (ECF No. 23.)

Plaintiffs certainly could have acted with more diligence. However, in light of the relatively brief delay and the complete lack of prejudice to Defendant that would result from allowing the amendment, the Court finds good cause to permit Plaintiffs to amend their Complaint under Rule 16(b)(4).

**B.     Only some of Plaintiffs' proposed amendments are futile under Rule 15.**

The Court now moves to the standard of Rule 15(a)(2), which directs the Court to "freely give leave when justice so requires." However, amendment may be denied "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Carson*, 633 F.3d at 495. For the reasons related to lack of prejudice and minimal delay outlined above, the Court finds that Plaintiffs' amendment is not brought in bad faith or for dilatory purposes, and amendment will not result in undue delay.

As for futility, the Court finds that Plaintiffs' additional factual allegations do not save Plaintiffs' claims for gross negligence or wantonness. The additional details (concerning alleged fabrication of the battery inspection reports and Defendant's failure to exercise care) do not overcome the larger problems that Plaintiffs have not identified a duty owed by Defendant outside the Service Agreement and that Ohio does not recognize a standalone claim for wantonness. Plaintiffs are therefore not permitted to reassert their claims for gross negligence or wantonness.

Further, the Court has determined that the original fraud claim was already sufficiently pleaded, and the additional factual allegations only bolster that sufficient claim. The Court is not persuaded by Defendant's argument that the additional allegations regarding the battery inspection reports' fabrication, as evidenced by two reports of inspections of two different

14

systems on two different dates having identical voltage and resistance readings, undermine Plaintiffs' allegations of reliance. (Def.'s Mem. in Opp'n 9–10, ECF No. 42.) As Plaintiffs point out, they never asserted that the similarity in the reports was "obvious" such that it would be unreasonable for Toray to believe they were accurate and to rely on them. Indeed, it would require a side-by-side comparison of the reports to note the unlikely similarities, a comparison that would not have been undertaken absent the explosion. (Pls.' Reply 13, ECF No. 46.) Plaintiffs' amended fraud claim is therefore not futile.

As to Plaintiffs' new breach of contract claim, Defendant makes no assertion that the proposed allegations fail to sufficiently plead a breach of contract claim under Ohio law. Defendant's only argument against adding this claim is that Plaintiffs should have asserted it earlier. (*See* Def.'s Mem. in Opp'n 7–8, ECF No. 42) ("it is obvious from their argument and submission herein, that they strategically made the wrong decision—by attempting to mask a contract claim as a tort action"; "these allegations were obviously known but are not adequately reflected in the original complaint"; and "the Court must put an end to this tactic by refusing to allow Plaintiffs to improperly plead their breach of contract claim when Plaintiffs knew precisely what they were doing"). But the Court has already addressed Plaintiffs' diligence and concluded that amendment should not be denied on that basis. Plaintiffs are therefore granted leave to amend their Complaint to assert their claim for breach of contract.

To the extent Defendant relies on the limitation-of-liability clause in the Service Agreement for the futility of Plaintiffs' claims, the Service Agreement appears to merely limit the amount of recoverable damages, and does not foreclose any claims altogether. (Service Agreement ¶ 6, ECF No. 36-1) ("In no event . . . shall [Defendant's] liability to [Toray] . . . exceed the price paid by [Toray] for the specific [inspection services] provided by [Defendant]

giving rise to the claim or cause of action."). Accordingly, the Court finds that the limitation-of-liability clause does not render Plaintiffs' breach of contract or fraud claims futile.

## IV.     DISPOSITION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings (ECF No. 36) is **GRANTED IN PART and DENIED IN PART**. Plaintiffs' claims for gross negligence and wantonness are **DISMISSED**. Further, Plaintiffs' Motion for Leave to Amend the Complaint (ECF No. 38) is **GRANTED IN PART and DENIED IN PART**. Plaintiffs are **ORDERED** to file an Amended Complaint in the form of their proposed Amended Complaint (ECF No. 38-1), except that Plaintiffs shall delete their proposed Count II (Gross Negligence) and Count III (Wantonness), **WITHIN SEVEN DAYS** of the date of this Order.

    **IT IS SO ORDERED.**

    /s/ *Chelsey M. Vascura*
    CHELSEY M. VASCURA
    UNITED STATES MAGISTRATE JUDGE