**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| MITSUI SUMITOMO INSURANCE COMPANY OF AMERICA AND TOKIO MARINE AMERICA INSURANCE COMPANY, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 2:23-cv-01398 |
| v. | ) ) | Magistrate Judge Chelsey M. Vascura |
| VERTIV CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

**AMENDED COMPLAINT FOR PROPERTY DAMAGE**

Mitsui Sumitomo Insurance Company of America and Tokio Marine America Insurance Company sue Vertiv Corporation as follows:

**THE PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Mitsui Sumitomo Insurance Company of America ("Mitsui") is a New York corporation with its principal place of business in New York City, New York.

2. Plaintiff Tokio Marine America Insurance Company ("Tokio Marine") is a New York corporation with its principal place of business in New York City, New York.

3. Defendant Vertiv Corporation ("Vertiv") is an Ohio corporation with its principal place of business in Columbus, Ohio. Defendant Vertiv may be served with process by service upon its registered agent: CT Corporation system, 2 North Jackson Street, Suite 605, Montgomery, Alabama 36104.

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## ALLEGATION OF FACTS

## BACKGROUND

6. This action arises from the May 20, 2022, explosion at the Toray Industries (America), Inc. ("Toray") carbon fiber composite material manufacturing facility in Decatur, Alabama.

7. At all times material to this Complaint, Plaintiff Mitsui provided property insurance covering the facility.

8. At all times material to this Complaint, Plaintiff Tokio Marine provided property insurance covering the facility.

9. The Toray facility uses four carbon fiber production process lines, designated CA1, CA2, CA3, and CA4, to manufacture carbon fiber composite material.

10. Safe operation of the carbon fiber production lines is dependent upon an uninterrupted supply of electrical power.

11. Each of the four carbon fiber production lines is equipped with an uninterruptable power supply ("UPS") designed to automatically and instantaneously provide a backup electrical power supply in the event of an external power outage.

12. The UPS systems at the Toray facility were installed by Defendant Vertiv Corporation in or about 2014.

13. Each of the four UPS systems is designed to provide backup electrical power from a set of forty 12-volt lead acid batteries.

14. At all times material to this Complaint, Defendant Vertiv was the exclusive provider of preventative maintenance services for all four of Toray's UPS systems.

## THE EXPLOSION

15. On May 20, 2022, at approximately 1:30 p.m., the electric utility company-supplied electricity to Toray's facility was briefly interrupted for a short period of time (approximately 18 seconds).

16. The UPS systems for production lines CA1, CA2, and CA4 operated as intended to automatically supply backup electrical power to those production lines, allowing them to safely shut down.

17. The UPS for production line CA3 malfunctioned and failed to provide the required backup electrical power for that production line to safely shut down.

18. As a result of the malfunction of the UPS system, production line CA3 experienced a catastrophic explosion.

19. As a result of the explosion of production line CA3, the Toray facility suffered extensive damage to its building and equipment in the approximate amount of $5,200,000 and business losses of approximately $13,500,000, for a total loss of approximately $18,700,000.

20. Subsequent inspection of the UPS system for CA3 revealed that all of its batteries were in poor condition, with evidence of bulging and cracking of the battery cases, which should have been obvious to Vertiv prior to the explosion.

21. After the incident, Vertiv replaced the batteries for the UPS system for production line CA3.

22. After replacement of the batteries, the CA3 UPS system was in proper operating condition.

23. The UPS system for production line CA3 malfunctioned because the batteries were in poor condition and not capable of supplying the electrical power required for proper operation of the system.

24. Pursuant to their contracts of insurance with Toray Industries, Plaintiffs Mitsui and Tokio Marine are obligated to indemnify Toray Industries for covered losses arising from the incident, and are subrogated to the extent of their indemnification to all claims, rights, and causes of action against those parties responsible for the May 20, 2022, explosion.

## VERTIV'S BATTERY INSPECTIONS

25. Defendant Vertiv inspected the UPS system for CA3 five weeks before the explosion, on April 14, 2022.

26. Defendant Vertiv did not indicate in its April 14, 2022, "Service Report: Battery" for the CA3 UPS that the batteries were in poor condition and incapable of supplying the electrical power required for proper operation of the UPS system.

27. Instead, in its April 14, 2022, "Service Report: Battery" for the CA3 UPS system batteries, Vertiv advised Toray that the system was "fully operational" and "no action required."

28. Vertiv also indicated in its April 14, 2022, "Service Report: Battery" for the CA3 UPS that there were no "Required Customer Actions" and "no issues to note."

29. In the "Findings and Recommendations" for its April 14, 2022, "Service Report: UPS" for the CA3 UPS system, Vertiv stated "annual pm no issues to note."

30. In the "Required Customer Actions" section of its April 14, 2022, "Service Report: UPS" for the CA3 UPS system, Vertiv stated "None."

31. The April 14, 2022, battery inspection report for CA3 contained voltage readings for each of the forty batteries comprising the CA3 system power supply.

4

32. The voltage readings for the batteries, were measured to three decimal places or one one-thousandths of a volt.

33. The April 14, 2022 inspection report for the CA3 system batteries showed normal, fully functioning batteries generating approximately thirteen volts of electricity.

34. On April 20, 2022, Vertiv inspected the forty batteries comprising the CA2 UPS system power supply.

35. Vertiv's report for the April 20, 2022, inspection of the CA2 batteries contains voltage readings measured to one one-thousandths of a volt for each of the forty batteries comprising the CA2 UPS system power supply.

36. The April 20, 2022 voltage readings for the forty batteries comprising the CA2 UPS power supply are identical to the voltage readings in the April 14, 2022 inspection report for the CA3 UPS system power supply.

37. It is extremely improbable that two different sets of forty batteries would have identical battery voltage readings.

38. The voltage readings in Vertiv's April 14, 2022, inspection report for the CA3 UPS system batteries were false.

39. The voltage readings in Vertiv's April 14, 2022, inspection report for the CA3 UPS system batteries were fabricated.

40. The voltage readings in Vertiv's April 20, 2022, inspection report for the CA2 UPS system batteries were false.

41. The voltage readings in Vertiv's April 20, 2022, inspection report for the CA2 UPS system batteries were fabricated.

5

42. The April 14, 2022, battery inspection report for CA3 also contained internal resistance readings for each of the forty batteries comprising the CA3 system power supply.

43. The internal resistance readings for the batteries were also measured to three decimal places.

44. Vertiv's report for the April 20, 2022, inspection of the CA2 batteries also contains internal resistance readings measured to three decimal places for each of the forty batteries comprising the CA2 UPS system power supply.

45. The April 20, 2022, internal resistance readings for the forty batteries comprising the CA2 UPS power supply are identical to the internal resistance readings in the April 14, 2022 inspection report for the CA3 UPS system power supply.

46. It is extremely improbable that two different sets of forty batteries would have identical battery internal resistance readings.

47. The internal resistance readings in Vertiv's April 14, 2022, inspection report for the CA3 UPS system batteries were false.

48. The internal resistance readings in Vertiv's April 14, 2022, inspection report for the CA3 UPS system batteries were fabricated.

49. The internal resistance readings in Vertiv's April 20, 2022, inspection report for the CA2 UPS system batteries were false.

50. The internal resistance readings in Vertiv's April 20, 2022, inspection report for the CA2 UPS system batteries were fabricated.

51. On May 26, 2022, six days after the explosion, Vertiv again inspected the forty batteries comprising the CA3 UPS system power supply.

52. During its May 26, 2022 inspection, Vertiv measured the voltage and internal resistance for each of the forty batteries comprising the CA3 UPS system power supply.

53. Vertiv's May 26, 2022 inspection showed that all forty batteries were unserviceable.

54. During the May 26, 2022 inspection, Vertiv found that most of the batteries for the CA3 UPS system power supply were generating four volts or less, and some showed no voltage at all.

55. The batteries for the CA3 UPS system power supply were in substantially the same condition on April 14, 2022, as they were on May 26, 2022.

## COUNT I – BREACH OF CONTRACT

56. At all times material to this action, Defendant Vertiv provided preventative maintenance services for Toray's UPS systems pursuant to a service agreement between Toray and Vertiv.

57. The Service Agreement constituted a contract between Toray and Vertiv.

58. Pursuant to its contract with Toray, Defendant Vertiv was required to perform its obligations under the contract with care, skill, reasonable expedience, and faithfulness.

59. Defendant Vertiv breached its contract with Toray by failing to perform its contract obligations with care, skill, reasonable expedience, and faithfulness. Rather, Defendant Vertiv performed its contractual obligations in a grossly negligent, wanton and reckless, and fraudulent manner.

60. Specifically, Vertiv breached its contract with Toray in a grossly negligent, wanton and reckless, and fraudulent manner in one or more of the following ways:

7

a. Failing to report to Toray that the batteries for the UPS system for CA3 were unserviceable with obvious visual indications of bulging and cracking of the battery cases;

b. Failing to report to Toray that the batteries for the CA3 UPS system were incapable of providing the electrical power required for proper operation of the UPS system and needed immediate replacement;

c. Falsely reporting to Toray that the batteries for the CA3 UPS system were "fully operational" and that "no action [was] required" with respect to those batteries;

d. Falsely reporting to Toray that there were no "Required Customer Actions" with respect to the batteries to the CA3 UPS system;

e. Falsely reporting to Toray that there were "no issues to note" with respect to the CA3 UPS system;

f. Falsely reporting to Toray "annual pm no issues to note" with respect to the batteries for the CA3 UPS system;

g. Falsely reporting to Toray that the batteries for the CA3 UPS system were showing normal voltages ranging from approximately 13 volts to over 13.5 volts;

h. Falsely reporting to Toray that the batteries for the CA3 UPS system were showing normal internal resistance;

i. Fabricating data showing the battery voltage and internal resistance readings for the CA3 UPS system were normal, when in fact all of the batteries were unserviceable; and/or

8

j. Other acts, omissions, and breaches as discovery may reveal.

61. As a direct, foreseeable, and proximate result of Defendant Vertiv's grossly negligent, wanton and reckless, and fraudulent breach of contract, Toray and Plaintiffs have been harmed in the approximate amount of $18,700,000.

## COUNT II — FRAUD

62. At all times material to this action, Vertiv knew that Toray was relying upon it to properly perform preventative maintenance on Toray's UPS systems.

63. In its April 14, 2022, "Service Report: Battery" for the CA3 UPS system, Vertiv advised Toray that the system was "fully operational" and "no action required."

64. Vertiv also indicated in its April 14, 2022 "Service Report: Battery" that there were no "Required Customer Actions" and "no issues to note."

65. Vertiv's statement in the April 14, 2022, "Service Report: Battery" that the CA3 UPS system batteries were "fully operational" was false because the system's forty batteries were in poor condition, with evidence of bulging and cracking that would have been obvious to a minimally competent technician, and were not capable of supplying the required electrical power to operate the UPS system.

66. Vertiv's statement "no action required" in the April 14, 2022, "Service Report: Battery" was false because the batteries required immediate replacement.

67. Vertiv's statement that there were "no issues to note" in the April 14, 2022, "Service Report: Battery" was false for the same reason.

68. In the "Findings and Recommendations" for its April 14, 2022, "Service Report: UPS" for the CA3 UPS system, Vertiv stated "annual pm no issues to note."

69. In the "Required Customer Actions" section of its April 14, 2022, "Service Report: UPS" for the CA3 UPS system, Vertiv stated "None."

9

70. Vertiv's statement "annual pm no issues to note" in the "Findings and Recommendations" for its April 14, 2022, "Service Report: UPS" for the CA3 UPS system was false because the system's forty batteries were in poor condition, with evidence of bulging and cracking that would have been obvious to a minimally competent technician, and were not capable of supplying the required electrical power to operate the UPS system.

71. Vertiv's statement "None" in the "Required Customer Actions" section of its April 14, 2022, "Service Report: UPS" for the CA3 UPS system was false because the batteries required immediate replacement.

72. Vertiv's April 14, 2022, inspection report for the CA3 UPS system batteries contained voltage readings for each of the forty batteries comprising the power source for the system.

73. Vertiv's April 14, 2022, report indicated normal voltage readings for each of the forty batteries.

74. The voltage readings in Vertiv's April 14, 2022, report were false.

75. The voltage readings in Vertiv's April 14, 2022, report were fabricated.

76. Vertiv's April 14, 2022, inspection report for the CA3 UPS system batteries contained internal resistance readings for each of the forty batteries comprising the power source for the system.

77. Vertiv's April 14, 2022, report indicated normal internal resistance readings for each of the forty batteries.

78. The internal resistance readings in Vertiv's April 14, 2022, report were false.

79. The internal resistance readings in Vertiv's April 14, 2022, report were fabricated.

80. Vertiv's false statements concerned material facts, specifically the condition of the UPS system batteries for production line CA3, that Toray reasonably relied upon and were fraudulent.

81. Vertiv's false statements concerning the condition of the batteries for the CA3 UPS system were intended to and did induce Toray to believe that Vertiv was properly performing its service of Toray's UPS systems when, in reality, it was not.

82. As a direct, proximate and foreseeable result of Vertiv's fraudulent statements, Toray and Plaintiffs have been damaged in the approximate amount of $18,700,000.

WHEREFORE, Plaintiffs pray that:

   a. Process issue and be served upon Defendant compelling it to appear and answer this Complaint;

   b. Plaintiffs have judgment in their favor and against Defendant in the approximate amount of $18,700,000, to be more specifically proven at trial; and

   c. Plaintiffs have all other relief allowed by law and equity.

Respectfully submitted this 4th day of December, 2023.

> /s/David M. Bessho
> David M. Bessho
> *Admitted Pro Hac Vice*
> David A. Terry
> *Admitted Pro Hac Vice*
> COZEN O'CONNOR
> Trial Attorneys
> The Promenade, Suite 400
> 1230 Peachtree Street, N.E.
> Atlanta, Georgia 30309
> Telephone:   (404) 572-2000
> Facsimile:   (404) 572-2199
> E-mail:   dbessho@cozen.com
> E-mail:   dterry@cozen.com
>
> *Counsel for Plaintiffs*

CO-COUNSEL:

Mark E. Utke
COZEN O'CONNOR
Ohio Bar No. 0088559
One Liberty Place,
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone: (215) 665-2000
E-mail: mutke@cozen.com

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| MITSUI SUMITOMO INSURANCE COMPANY OF AMERICA AND TOKIO MARINE AMERICA INSURANCE COMPANY, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 2:23-cv-01398 |
| v. | ) ) | Magistrate Judge Chelsey M. Vascura |
| VERTIV CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

**CERTIFICATE OF SERVICE**

I, hereby certify that on December 4, 2023, I electronically filed the within and foregoing *Amended Complaint for Property Damage* with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorney of record:

Marc J. Kessler
Taft Stettinius & Hollister, LLP
41 South High Street, Suite 1800
Columbus, Ohio 43215-6106
Mkessler@taftlaw.com
*Counsel for Defendant*

                                       */s/ David M. Bessho*
                                       David M. Bessho