UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MITSUI SUMITOMO INSURANCE
COMPANY OF AMERICA,** *et al.***,**

        **Plaintiffs,**

    v.

**VERTIV CORPORATION,**

        **Defendant.**

Civil Action 2:23-cv-1398
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

Plaintiffs, Mitsui Sumitomo Insurance Company of America and Tokio Marine America Insurance Company, New York citizens and subrogees of their insured, Toray Industries (America), Inc., bring this action founded on diversity jurisdiction under 28 U.S.C. § 1332 against Defendant Vertiv Corporation, an Ohio citizen, alleging breach of contract and fraud arising from Vertiv's alleged misrepresentations as to the condition of batteries powering Toray's uninterruptable power supply. This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge under 28 U.S.C. § 636(c), is before the Court on Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint under Rule 12(b)(6) (ECF No. 56). For the reasons that follow, Defendant's Motion is **DENIED**.

        **I.**        **BACKGROUND**

Plaintiffs' insured, Toray, operates a carbon fiber composite material manufacturing facility in Decatur, Alabama. (Am. Compl. ¶ 6, ECF No. 50.) At all relevant times, Plaintiffs provided property insurance covering the facility. (*Id.* at ¶¶ 7–8.) The facility uses four carbon

fiber production process lines, designated CA1, CA2, CA3, and CA4, to manufacture carbon fiber composite material. (*Id.* at ¶ 9.) Each of the production lines is equipped with an uninterruptable power supply ("UPS") designed to automatically and instantaneously provide a backup electrical power supply in the event of an external power outage. (*Id.* at ¶ 11.) Each UPS system provides backup electrical power from a set of forty batteries. (*Id.* at ¶ 13.)

The UPS systems at the Toray facility were installed by Defendant in 2014. (*Id.* at ¶ 12.) Defendant also provided ongoing preventative maintenance services for all four of the UPS systems and was at all material times the exclusive provider of preventative maintenance services for the UPS systems pursuant to a June 23, 2021 Service Agreement between Toray and Defendant. (*Id.* at ¶¶ 14, 56; Service Agreement, ECF No. 56-1.)

On April 14, 2022, Defendant inspected the UPS system for CA3 and reported that the system was "fully operational," noting "no action required," no "Required Customer Actions," "no issues to note," and "annual pm no issues to note." (Am. Compl. ¶¶ 25–30, ECF No. 50.)

Five weeks later, on May 20, 2022, the Toray facility lost power for 18 seconds. (*Id.* at ¶ 15.) Although the UPS systems for the other three production lines operated as intended and supplied backup electrical power, the UPS for production line CA3 malfunctioned and failed to provide the required backup electrical power for that production line to safely shut down. (*Id.* at ¶¶ 16–17.) As a result of the failure of the UPS system, production line CA3 "experienced a catastrophic explosion" causing extensive damage to Toray's building and equipment. (*Id.* at ¶¶ 18–19.)

Subsequent inspection of the CA3 UPS system on May 26, 2022 (six days after the explosion), revealed that all of its forty batteries were in poor condition, with evidence of bulging and cracking of the battery cases, which Plaintiffs allege should have been obvious to

2

Defendant when inspecting the UPS on April 14, 2022. (*Id.* at ¶ 20, 25, 51.) Plaintiffs allege that the CA3 UPS system malfunctioned because the batteries were in poor condition and not capable of supplying the electrical power required for proper operation of the system. (*Id.* at ¶ 23.) After the incident, Defendant replaced the batteries for the CA3 UPS system, after which it was found to be in proper operating condition. (*Id.* at ¶¶ 21–22.)

Defendants' prior inspection reports were reviewed following the explosion. In addition to Defendant's inspection of the CA3 UPS system on April 14, 2022, Defendant inspected the CA2 UPS system on April 20, 2022. (*Id.* at ¶¶ 25, 34.) It was discovered that the voltage readings and internal resistance readings (each measured to three decimal places) for the CA2 UPS's set of forty batteries was identical to the voltage readings and internal resistance readings for CA3 UPS's set of forty batteries. (*Id.* at ¶¶ 32, 35–36.) Plaintiffs allege that the voltage readings and internal resistance readings in both inspection reports were "false" and "fabricated" owing to the extreme improbability of each set of forty batteries having identical readings. (*Id.* at ¶¶ 37–50.)

Plaintiffs' Amended Complaint in subrogation asserts two causes of action: breach of contract (Count I) and fraud (Count II). For each of these counts, Plaintiffs seek $18,700,000 in damages comprising $5.2 million in damage to Toray's building and equipment as well as $13.5 million in business losses. (*Id.* at ¶¶ 19, 61, 82.) On January 3, 2024, Defendant filed the present motion under Federal Rule of Civil Procedure 12(b)(6) seeking to dismiss Plaintiffs' fraud claim for failure to allege a tort-based duty or tort-based damages independent of the parties' contract.

## II.  STANDARD OF REVIEW

Defendant moves to dismiss Plaintiffs' fraud claim under Rule 12(b)(6). Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the

Court must "accept non-conclusory allegations of fact in the complaint as true and determine if the plaintiff has stated a plausible clam for relief." *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 846 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). "A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (cleaned up).

Plaintiffs' briefing is accompanied by exhibits that were not attached to Plaintiffs' Amended Complaint. To the extent those exhibits were "referred to in the complaint and are central to the claims contained therein," the Court may consider the exhibits without converting the Motion to dismiss under Rule 12(b)(6) to one for summary judgment under Rule 56. *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011). Otherwise, the Court must either reject reliance on the exhibits or convert the motion to one for summary judgment. *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006). The Court concludes in this instance that reliance on Plaintiffs' exhibits is not necessary to decide Defendant's Motion and the Court therefore will not consider those exhibits.

### III. ANALYSIS

Defendant contends that Plaintiffs' fraud claim must be dismissed because the fraud claim arises out of the same facts as the breach of contract claim, Plaintiffs have failed to allege breach of any tort-based duty independent of Defendant's contractual obligations, and the fraud claim is predicated on the same damages as the breach of contract claim. (Def.'s Mot. 5–11, ECF No. 56.) Plaintiffs do not dispute that their claims arise out of the same facts or that they must plead breach of a separate duty and separate damages for their fraud claim to survive. However, Plaintiffs contend that they have alleged breach of an independent, non-contractual duty to not

4

defraud, and that punitive damages may be available on their fraud claim that would not be duplicative of the compensatory damages available on their breach of contract claim. (Pls.' Mem. in Opp'n 8–14, ECF No. 57.)

"[U]nder Ohio law the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." *Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981). However, a fraud claim arising out of the same facts as a breach of contract claim "is permitted when two requirements are met: (1) if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed; and (2) the fraud action includes actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach." *Gregoire v. Rice Drilling D. LLC*, No. 2:21-CV-4631, 2021 WL 9967132, at *2 (S.D. Ohio Nov. 17, 2021) (quoting *Popovich v. Sony Music Ent., Inc.*, No. 1:02 CV 359, 2005 WL 8171846, at *12 (N.D. Ohio Feb. 10, 2005), *on reconsideration in part on other grounds*, 2005 WL 8171775 (Apr. 28, 2005)).

Ohio appellate courts have recognized the existence of various extra-contractual duties that could support a claim for fraud or negligent misrepresentation arising out of the same facts as a claim for breach of contract. *See*, *e.g.*, *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1272 (Ohio Ct. App. 1996) (finding an independent duty to disclose information that would render a prior statement untrue or misleading); *Hanamura-Valashinas v. Transitions by Firenza, LLC*, 160 N.E.3d 359, 365 (Ohio Ct. App. 2020) (finding a duty independent of the parties' contract to not defraud via falsification of billing statements). Based on this authority, the Court is persuaded that, in addition to Defendant's contractual duty to perform preventative maintenance and inspections for Toray's UPS systems, Defendant also had a tort-based duty to

5

refrain from making intentional, affirmative misstatements of fact such as the alleged fabricated inspection reports.[1]

However, even courts recognizing an independent duty not to defraud agree that that duty is insufficient to maintain a tort claim in the absence of independent damages caused by the tort. In *Textron*, the appellate court held that the trial court erred when it failed to grant the defendant's motions for directed verdict and judgment notwithstanding the verdict on the plaintiff's claim for negligent misrepresentation because the plaintiff "did not offer evidence of damages in tort additional to those it claimed for breach of contract." 684 N.E.2d at 1272; *see also Hanamura-Valashinas*, 160 N.E.3d at 367 (where "the tort claim alleges a breach of an independent duty, it must also allege damages that are separate and distinct from the breach of contract") (quoting *Ineos USA L.L.C. v. Furmanite Am., Inc.*, No. 1-14-06, 2014 WL 5803042, at *6 (Ohio Ct. App. Nov. 10, 2014)).

Importantly, the separate tort-based damages sufficient to support a separate tort claim must be *actual* damages. *See Textron*, 684 N.E.2d at 1271 ("an action arising out of contract which is also based upon tortious conduct must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach of the contract"); *Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.*, 656 F. Supp. 49, 63 (S.D. Ohio 1986) ("[W]here an action rises out of a contract, and is also based upon tortious conduct, 'actual damages attributable to the wrongful acts of the alleged tortfeasor must be shown in addition to those damages attributable solely to the breach of the contract.'") (quoting *Ali v. Jefferson Ins.*

---

[1] Defendant attempts to distinguish *Hanamura-Valashinas* on the basis that it involved a consumer contract and falsified invoices, rather than a commercial contract and falsified inspection reports. The Court does not find this distinction to render *Hanamura-Valashinas*'s reasoning inapplicable here.

6

*Co.*, 449 N.E.2d 495, 499 (Ohio Ct. App. 1982)); *Med. Billing, Inc. v. Med. Mgmt. Scis., Inc.*, 212 F.3d 332, 338 (6th Cir. 2000) ("Ohio law" requires "requiring that fraud damages be limited to the injury actually arising from the fraud. The tort injury must be unique and separate from any injury resulting from a breach of contract."); *Gregoire*, 2021 WL 9967132, at *2 (requiring "actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach") (quoting *Popovich*, 2005 WL 8171846, at *12); *Popovich*, 2005 WL 8171846, at *13 ("Fraud damages that are independent of contract damages are typically reliance or forbearance damages.").

Here, in response to Defendants' Motion, Plaintiffs identified only the possibility of punitive damages as potential non-contractual damages. (Pls.' Mem. in Opp'n 11–14, ECF No. 57.)[2] But Plaintiffs cannot rely on possible *punitive* damages on their fraud claim to establish the necessary independent, *actual*, tort-based damages. And, in any case, Plaintiffs cannot recover punitive damages on their fraud claim without first establishing actual damages attributable to Defendant's fraud. *See Ali*, 449 N.E.2d at 499 ("It is well-established that punitive damages may not be recovered in the absence of proof of actual injury or damage. In order to recover punitive damages in a case such as this, where the action arises out of a contract, but is also based upon tortious conduct, actual damages attributable to the wrongful acts of the alleged tortfeasor must be shown in addition to those damages attributable solely to the breach of the contract.").

---

[2] Plaintiffs did not include a prayer for punitive damages in the original or Amended Complaint and the parties dispute whether Plaintiffs may seek punitive damages now. Because punitive damages do not affect the viability of Plaintiffs' fraud claim, the Court need not resolve this issue at this time.

But there is another facet of this case that may permit Plaintiffs to recover extra-contractual fraud damages. The Service Agreement between Toray and Defendant contains a limitation on Defendant's liability:

> In no event, regardless of the form of the claim or cause of action (whether based in contract, infringement, negligence, strict liability, other tort or otherwise), shall [Defendant's] liability to [Toray] and/or its customers exceed the price paid by buyer for the specific goods [defined elsewhere in the Service Agreement to include "services"], parts, and/or software provided by [Defendant] giving rise to the claim or cause of action.
>
> [Toray] agrees that [Defendant's] liability to [Toray] and/or its customers shall not extend to include incidental, consequential, or punitive damages. The term "consequential damages" shall include, but not be limited to, loss of anticipated profits, business interruption, loss of use, revenue, reputation and data, costs incurred, including without limitation, for capital, fuel, power and loss or damage to property or equipment.

(Service Agreement ¶ 6, ECF No. 56-1.) Plaintiffs' prayer for $18.7 million in damages well exceeds the $27,000 price of the inspection services that Toray paid to Defendant, and therefore this clause has the potential to drastically limit Plaintiffs' recovery. Defendant raised the clause in briefing a previous motion, and Plaintiffs contested the validity of the clause. (*See* Def.'s Mot. for J. on the Pleadings, ECF No. 36; Pls.' Mem. in Opp'n to J. on the Pleadings, ECF No. 37.) However, neither party raised the limitation of liability clause in briefing the present Motion.

The parties may have understandably avoided raising the contractual limitation of liability for strategic reasons. If Plaintiffs are correct and the clause is unenforceable, then the actual damages available on their contract claim may be coextensive with the actual damages available on their fraud claim, thus potentially rendering their fraud claim (and its potential for punitive damages) deficient. On the other hand, if Defendant is correct and the clause is enforceable, that position might open Defendant up to arguments that recovery in fraud is necessary to fully compensate Plaintiffs for Toray's actual damages. To be clear, the Court takes no position at this time on the validity of the clause and does not constrain the parties to any

particular position on the clause's validity in the future. But the Court does find that the clause's potential to limit Plaintiff's recovery means that Plaintiffs' Amended Complaint sufficiently alleges the potential for actual damages recoverable in fraud independent of those recoverable in contract.

For these reasons, the Court permits Plaintiffs to plead in the alternative and allows both their contract and fraud claims to proceed at the pleading stage. *See*, *e.g.*, *Cunningham Prop. Mgmt. Tr. v. Ascent Res. - Utica, LLC*, 351 F. Supp. 3d 1056, 1067 (S.D. Ohio 2018) (permitting both contract and fraud claims to proceed after finding it "unclear at this stage of the litigation if recovery under both causes of action would produce duplicative damages") (quoting *Lebo v. Impac Funding Corp.*, 5:11-cv-1857, 2012 WL 630046, at *6 (N.D. Ohio Feb. 8, 2012), *report and recommendation adopted*, 2012 WL 630049 (Feb. 27, 2012)); *see also Price v. Gulfport Energy Corp.*, No. 2:20-CV-01057, 2020 WL 5433683, at *2 (S.D. Ohio Sept. 10, 2020) (same).[3] Of course, if Plaintiffs ultimately prevail on their fraud claim, their recoverable damages would be limited to those separate and distinct from any damages awarded on the contract claim. *See Cunningham*, 351 F. Supp. 3d at 1067 (quoting *Lebo*, 2012 WL 630046, at *6).

## IV. DISPOSITION

For the foregoing reasons, Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint under Rule 12(b)(6) (ECF No. 56) is **DENIED**.

**IT IS SO ORDERED.**

---

[3] Defendant attempts to distinguish *Cunningham* and *Price* on the basis that they dealt with royalty payments owing under oil and gas leases and that *Cunningham* was a class action; but the Court does not find these factual distinctions to bear on the relevant legal principles. Moreover, although Defendant argues that neither case examined whether a duty separate from the leases existed to support the fraud claims, the Court has already concluded in this case that Defendant had an independent duty not to defraud.

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE